FILED

## UNITED STATES DISTRICT COURT
### Eastern District of Virginia
### Alexandria Division

2022 SEP 19 P 4: 27

**ASRA Q. NOMANI**

**Plaintiff,**

v.

**ATIF QARNI,**

    **in his official and individual capacity,**

**Defendant.**

Case No.: 1: 22 CV 1065

## COMPLAINT

Plaintiff, Asra Q. Nomani (hereinafter "Ms. Nomani"), by pro se, brings this Complaint against former Virginia Education Secretary Atif Qarni for violating her rights to free speech under the First and Fourteenth Amendments and for violation of 28 U.S.C. 1983. In support thereof, the Plaintiff states as follows:

1

## JURISDICTION AND VENUE

This action arises under U.S. Const. Amend. I and XIV and the Plaintiff seeks remedies under 42 U.S.C. § 1983. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 and by pendent jurisdiction as to the state law claim made herein.

Venue lies in the Eastern District of Virginia pursuant to 28 U.S.C. § 1391(b). Defendant is Atif Qarni and he has been a resident of this jurisdiction. Substantially, all events or omissions giving rise to this claim occurred in this jurisdiction.

## PARTIES

1.      Ms. Nomani is a resident of Fairfax County, Virginia, and the mother of a child who was a student at Thomas Jefferson High School for Science and Technology (hereinafter "TJ"), a public Governor's School in Fairfax County Public Schools ("FCPS"), during the events that give rise to this claim. She is a former *Wall Street Journal* reporter, a respected journalist, and a devoted advocate for youth. For the 2020-2021 school year, the membership of the Thomas Jefferson Parent Teacher Student Association (hereinafter "TJ PTSA") had elected her to an officer position as Corresponding Secretary on the Executive Committee of the Thomas Jefferson Parent Teacher Student Association. She was editor of the TJ PTSA newsletter, "This Week @ TJ," and oversaw communications for the TJ PTSA.

2.      Defendant Atif Qarni (hereinafter "Secretary Qarni") was at all times pertinent to the claims raised herein, the Secretary of Education of the Commonwealth of Virginia, employed by the Commonwealth of Virginia and a cabinet member of the Office of the Governor of Virginia, Ralph Northam.

NOMANI V. QARNI
*Complaint*
Page 3 of 25

3.      At all times pertinent to the claims made herein, the defendant acted, in his individual capacity and in concert with others not named herein, under authority of the color of state law to violate and interfere with the exercise of rights guaranteed to Plaintiff under the Constitution of the United States.

## FACTS

4.      On Aug. 5, 2020, Ms. Nomani emailed the Virginia Department of Education's office, Secretary Qarni's office and the Governor's office, explaining that she was working on a column discussing a taskforce created to examine admissions to Governor's Schools, including to Thomas Jefferson High School for Science and Technology, which are akin to magnet schools for academically advanced students. Ms. Nomani asked several questions about the Northam administration's review process and its public presentations on the topic. Ms. Nomani also sent the email to the Office of the Secretary of Education and Alena Yarmosky, Press Secretary to Virginia Governor Ralph Northam.

5.      On Tuesday, August 11, 2020, Ms. Nomani published a column documenting Secretary Qarni's efforts to implement an overhaul of TJ admissions. Ms. Nomani's piece voiced her support of the current admissions policies and practices at the time that included race-blind, merit-based admissions tests. See Nomani, Asra, "The Woke Army's Race War on America: Secretive Virginia Governor's 'Task Force' Threatens Thomas Jefferson High School for Science and Technology," August 11, 2020, available at https://asrainvestigates.substack.com/p/the-woke-armys-race-war-on-americas.

6.      In the column, Ms. Nomani wrote that she had joined other parents in establishing a grassroots organization, Coalition for TJ, petitioning to oppose Secretary Qarni's overhaul of

admissions to the school as targeted discrimination against Asian American students. The Coalition for TJ is compromised largely of hardworking immigrant parents, like Ms. Nomani, mostly from countries in Asia, including China and India.

7.      On Friday, August 14, 2020, at 8:50 a.m., Secretary Qarni responded via email to a parent expressing concern with his planned TJ admissions changes and alleged that "one" Coalition for TJ parent was "associated" with "people and a group that was declared a hate group by the Southern Poverty Law Center." He wrote: "It was also brought to my attention that one of your fellow Coalition members is associated with people and a group that was declared a hate group by the Southern Poverty Law Center." He added: "The correspondence I've seen from your Coalition and the rhetoric of some of your Coalition members are using [sic] is just like rhetoric of white supremacists and hate groups."

8.      Seven days later, on Friday, August 21, 2020, at 4:11 p.m., Secretary Qarni's executive assistant, Hala Al-Tinawi, emailed the president of TJ's Parent Teacher Student Association ("TJ PTSA"), Nicholas Costescu, writing: "I hope this message finds you well, [sic] I am reaching out from the office of the Secretary of Education. Secretary Atif Qarni would like to host a series of public listening sessions to discuss the proposed changes being made to the Governors [sic] Schools admissions." She continued: "He is requesting two Thomas Jefferson PTSA members to join him in a virtual panel discussion on Sept. 8th from 7:00 pm-8:00 pm. I am hoping that two of your members would be available to join him to speak on behalf of the PTSA." Ms. Al-Tinawi's email signature block included: "Office of Governor Ralph S. Northam." Her email address was from the official Office of the Governor: hala.al-tinawi@governor.virginia.gov.

9.      In hosting these panels in his official capacity as the Virginia Secretary of Education, Secretary Qarni created a limited public forum in which he clearly stated the PTSA

could select two representatives to speak on its behalf. In his virtual format, Secretary Qarni controlled who could speak by giving designated speakers the right and privilege to speak during the public event, directly engaging with Secretary Qarni and other panelists Other participants were restricted to simply being able to post a written comment in the meeting's chat box, where the Education Secretary and other panelists could choose to ignore the comments.

10.     On Thursday, August 27, 2020, a TJ parent, Michelle Giles, supporting admissions changes to TJ, prematurely published a post on the Facebook page of an organization called the TJ Alumni Action Group, which also supported Secretary Qarni's admissions changes to TJ. In the post, Mrs. Giles wrote that Mr. Costescu and Ms. Nomani were the TJ PTSA representatives selected by the TJ PTSA to speak at Secretary Qarni's public listening sessions.

11.     In fact, the TJ PTSA Executive Committee, comprising of the officers of the organization, were considering Mr. Costescu and Ms. Nomani as the representatives but had not yet made a final decision as of Thursday, August 27, 2020.

12.     Secretary Qarni got the message. Within hours after Mrs. Giles' posting, at 6:11 p.m., on Thursday, August 27, 2020, Secretary Qarni's executive assistant, Ms. Al-Tinawi, sent an email to TJ PTSA President Mr. Costescu, seeking to schedule a phone call with Secretary Qarni to discuss a "few things" about the listening session. Ms. Al-Tinawi wrote: "Good Afternoon Nick, Secretary Qarni is wondering if you would be available for a quick 15-20 minute call tomorrow to discuss a few things for the listening sessions."

13.     That evening, at 6:51 p.m., on Thursday, August 27, 2020, Mr. Costescu responded to the email, asking if the entire TJ PTSA Executive Committee could join the phone call with Secretary Qarni.

14.     Within the hour, at 7:36 p.m., on Thursday, August 27, 2020, Ms. Al-Tinawi replied

to Mr. Costescu, writing: "Secretary would prefer to just talk to you, thanks!"

15.     Secretary Qarni had no intention of allowing Ms. Nomani to speak at the public forum. Displeased with the column she had written critiquing Governor Northam's proposed rehaul of the Governor's Schools, Secretary Qarni conducted a call with Mr. Costescu on the morning of Friday, August 28, 2020. Secretary Qarni told Mr. Costescu that Ms. Nomani could not be a panelist and he would block the TJ PTSA from participating if Ms. Nomani were a panelist. Mr. Costescu took notes on his computer.

16.     According to Mr. Costescu's notes, Secretary Qarni said: "Not recommend having 'asra something' on the panel.'" A few minutes later, Secretary Qarni referred to "Asra something" as "Ms. Nomani."

17.     Secretary Qarni falsely accused Ms. Nomani of being a member of a hate group designated by the Southern Poverty Law Center (hereinafter "SPLC") to justify unconstitutionally blocking her from speaking in the public forum discussing education policy in Virginia.

18.     Secretary Qarni said: "She's associated with a hate group." He continued: "She can't be on the panel." Mr. Costescu took contemporaneous notes of the meeting.

19.     Taken aback, Mr. Costescu asked Secretary Qarni the name of the hate group to which Ms. Nomani allegedly belonged. Secretary Qarni singled out Ms. Nomani based on her religious identity as a Muslim and said the group was the Muslim Reform Movement, a grassroots organization of Muslims advocating for peace, tolerance, women's rights, and secular governance. Secretary Qarni *falsely* claimed that the Muslim Reform Movement is a group designated as extremist by the SPLC.

20.     The Southern Poverty Law Center does **not** designate the Muslim Reform Movement an "extremist" group. See: https://www.splcenter.org/fighting-hate/extremist-

files/groups.

21.     The mission of the Muslim Reform Movement is as follows: "We are Muslims who live in the 21st century. We stand for a respectful, merciful and inclusive interpretation of Islam. We are in a battle for the soul of Islam, and an Islamic renewal must defeat the ideology of Islamism, or politicized Islam, which seeks to create Islamic states, as well as an Islamic caliphate. We seek to reclaim the progressive spirit with which Islam was born in the 7th century to fast forward it into the 21st century. We support the Universal Declaration of Human Rights, which was adopted by United Nations member states in 1948. We reject interpretations of Islam that call for any violence, social injustice and politicized Islam. Facing the threat of terrorism, intolerance, and social injustice in the name of Islam, we have reflected on how we can transform our communities based on three principles: peace, human rights and secular governance."

22.     The chief offense of the Muslim Reform Movement and members, like Ms. Nomani, to Secretary Qarni is that it and Ms. Nomani stands for a progressive interpretation of Islam. While this may offend Secretary Qarni's sensibilities as a Muslim and his personal religious beliefs, prompting him to label the Muslim Reform Movement as a "hate group," it is hardly grounds for disqualifying Ms. Nomani as a TJ PTSA speaker. And it is demonstrative of Secretary Qarni's bigoted and sectarian discrimination against Ms. Nomani.

23.     Secretary Qarni cannot simply state that he made a mistake. He knew exactly what he was doing. And he knew exactly what Ms. Nomani's religious organization represents. She is an internationally acclaimed writer. She is despised by certain Muslim clerics and organizations, receiving death threats because they consider her progressive values so threatening. Secretary Qarni abused his political power to silence her with ad hominem attacks. He was intimidating her and punishing her to make an example of her and to send a message to TJ parents – parents who

are mostly Asian and mostly immigrant, many of them from India, like Ms. Nomani.

24.     On Friday, August 28, 2020, Mr. Costescu had a meeting with the TJ PTSA Executive Committee, including Ms. Nomani, and shared the details of the conversation with Secretary Qarni, including his ban on Ms. Nomani's participation as a speaker on the panel.

25.     Ms. Nomani was very disturbed by Secretary Qarni's abuse of power.

26.     On Thursday, Sept. 3, 2020, at 11:57 a.m., Secretary Qarni used his official email address, atif.qarni@governor.virginia.gov, to send an email to the public with the subject line "Virtual Town Halls re: Governor Schools." He detailed that he would be hosting "three virtual town halls to address questions about the state process and plans to improve the Diversity at our Governor Schools by making the admissions process more Equitable and Inclusive." He identified three meeting dates: Sept. 9, 2020, for current students at Governor's Schools; Sept. 15, 2020, for parents of current students at Governor's Schools; and Sept. 17, 2020, for alumni of Governor's Schools.

27.     The evening of Saturday, September 5, 2020, at 7:25 p.m., the TJ PTSA Executive Committee at Thomas Jefferson High School for Science and Technology sent Secretary Qarni an email stating that Mr. Costescu and Ms. Nomani would be the two designated PTSA representatives for Secretary Qarni's planned "listening session" with parents. The TJ PTSA noted, "We specifically selected Ms. Nomani because she was the person who brought the issue to our attention, and she is most informed on the subject, having investigated this issue for some time as a professional journalist. We are confident these two representatives will articulate the position of the TJ PTSA and its members."

28.     The TJ PTSA further wrote: "Further, we wish to bring to your attention our deep concern about the incident that occurred on the morning of Friday, August 28, 2020, during a

telephone call initiated by you with Dr. Costescu. Unfortunately, you attempted to block the inclusion of Ms. Nomani as one of the PTSA speakers, alleging that Ms. Nomani is a member of a 'hate group,' as designated by the Southern Poverty Law Center. Upon inquiry, you stated the 'hate group' is the Muslim Reform Movement. You further stated that Ms. Nomani is not a journalist."

29.     The TJ PTSA said, "We note this is the second allegation by you, presumably also against Ms. Nomani. In an Aug. 14, 2020, email to a TJ parent, you wrote that 'one of your fellow Coalition members is associated with people and a group that was declared a hate group by the Southern Poverty Law Center.' You additionally stated that if the TJ PTSA included Ms. Nomani as one of its two speakers, you would not allow the TJ PTSA to represent our members on the panel."

30.     The TJ PTSA noted, "Following the call, the TJ PTSA investigated your allegation that Ms. Nomani is a member of a 'hate group.' The Muslim Reform Movement is not listed in the Southern Poverty Law Center's list of 'Hate Groups,' nor is Ms. Nomani listed among 'Extremists.' Your allegation against Ms. Nomani was therefore patently false. According to its platform, the mission of the Muslim Reform Movement (of which Ms. Nomani is a co-founder) is to advocate for peace, human rights, women's rights and secular governance. The Muslim Reform Movement and its members 'support the Universal Declaration of Human Rights,' passed in 1948 by the United Nations General Assembly. In addition, Ms. Nomani is a well-respected professional journalist."

31.     The TJ PTSA wrote, "The TJ PTSA Executive Committee is gravely concerned by your attempt to discredit a TJ parent and want to reaffirm our full support of our desired representatives. The TJ PTSA is committed to its mission to advocate for TJ students and families,

NOMANI V. QARNI
*Complaint*
Page 10 of 25

and we know that both Dr. Costescu and Ms. Nomani will represent and advocate for our members with fidelity. We hope that you will set aside any political or personal differences you may have with Ms Nomani in order to allow and support all parent views, including those of our membership, to be represented. It would be extremely disappointing if you chose to not listen to the views of parents.

32.     The 12 members of the Fairfax County School Board members were copied in the email, as were officers of the Virginia PTA, including Virginia PTA President Donna Colombo, Virginia PTA Vice President of Advocacy Jenna Alexander, Northern Virginia District PTA Director Hamid Munir, and Northern Virginia District Advocacy Chair Julie Shepard.

33.     A little over three hours later, at 9:42 p.m., on the night of Saturday, September 5, 2020, Secretary Qarni wrote an email to Mr. Costescu and said, "Thanks for your email. TJ PTSA doesn't need to be represented on the panel." He wrote that he would be "writing the policy for the Governor to consider," and continued his attack on Ms. Nomani, stating, "I am not going to let that process be dominated by individuals or organizations engaging in vitriolic hateful discourse."

34.     On September 7, 2020, at 11 a.m., a TJ mother sent an email to Secretary Qarni and questioned his decision to ban Ms. Nomani.

35.     Moments later, at 11:12 a.m., Secretary Qarni responded to the email and double-downed on his attacks on Ms. Nomani, writing, "The next few weeks as my office is writing the policy for the Governor to consider, that will be shaped by looking at data, research and best practices to modernize the admissions process. I'm not going to let that process be dominated by individuals engaging in vitriolic hateful discourse. TJ PTSA Executive Committee is insisting they be represented by a person who has engaged in a lot of vitriolic hateful discourse. I requested they designate someone else to be on the panel and they do not want to do that."

NOMANI V. QARNI
*Complaint*
Page 11 of 25

36.     That late morning, at 11:37 a.m., on Monday, September 7, 2020, the TJ mother responded, writing: "Ms. Nomani is a highly-respected, highly-informed investigative reporter. She is neither hateful nor vitriolic. The PTSA has selected her and you are silencing her and therefore the PTSA, whom you have now dis-invited to the panel…."

37.     On September 10, 2020, the Associated Press published an article by Matthew Barakat in which Secretary Qarni repeated his flawed and illegal justification for barring Ms. Nomani from exercising her First Amendment rights. Secretary Qarni repeated his defamation against Ms. Nomani, stating there were "red flags" about her participation and defaming her this time as "anti-Muslim." Ms Nomani is not "anti-Muslim" but in fact a Muslim advocate for Islamic teachings of rational thought, critical thinking, women's rights, human rights, and peace.

38.     The article was republished in numerous media outlets around the country. That day, the Washington Post published the Associated Press article, as did WTOP, ABC 8 News WRLC, and numerous national media outlets over the next weeks and are all currently available.

39.     Based on the lies that Ms. Nomani was a member of an extremist group as designated by the SPLC and engaged in "vitriolic hateful discourse," Secretary Qarni banned Ms. Nomani and the TJ PTSA from participating as panelists and proceeded with the public forum without Ms. Nomani and the TJ PTSA.

40.     Secretary Qarni held his "listening session" on Tuesday, September 15, 2020. The PTSA was not allowed to have a representative speak and Ms. Nomani was not allowed to speak as a PTSA representative. No parents except for parents hand-selected by Secretary Qarni were allowed to speak.

41.     Secretary Qarni never provided the Plaintiff with an opportunity to challenge his rejection of her as a speaker. Secretary Qarni provided the Plaintiff no notice nor hearing at any

NOMANI V. QARNI
*Complaint*
Page 12 of 25

time to restore her ability to participate in the Sept. 15, 2020, town hall, the subsequent town hall

on Sept. 17, 2020, or a subsequent public meeting hosted by Secretary Qarni on Dec. 1, 2020, of

Asian American community leaders.

<u>**CAUSES OF ACTION**</u>

**COUNT I**
**VIOLATION OF THE FIRST AMENDMENT**
**DEFENDANT ATIF QARNI**

42.      The allegations of Paragraphs 1-41 are repeated and incorporated herein.

43.      At all times referenced herein, Plaintiff was engaged in, or was attempting to

engage in, political speech protected by the First Amendment of the United States Constitution as

applied to the states by the Fourteenth Amendment.

44.      Commencing in August 2020, Defendant individually and in concert with others

undertook a course of conduct to restrict Plaintiff's participation in a public discussion of the new

admissions changes to Virginia Governor's Schools, violating her rights to free speech under the

First Amendment.

45.      Secretary Qarni exercised a prior restraint of speech against Plaintiff. He did not

wait until she had spoken in the town hall to remove her because of illegal speech. Rather, he

barred all speech from Plaintiff *before* she had even gotten an opportunity to speak.

46.      The federal and state constitutions prohibit state actors from silencing dissenting

voices and retaliating against those with opposing viewpoints. But that is precisely what Secretary

Qarni did in 2020. The facts are straightforward and beyond dispute.

47.      The First Amendment protects the right to engage in political speech and prohibits

state government actors from abridging free speech. *Gitlow v New York*, 268 U.S. 652 (1925).

Political speech is at the core of that protected by the First Amendment. *New York Times, Co v Sullivan*, 376 U.S. 254 (1964).

48.     The First Amendment prohibits government officials from silencing dissenting voices and retaliating against people because of their religion or because they have opposing viewpoints. See e.g., Carey v. Brown, 447 U.S. 455, 463 n.6 (1980) ("The First Amendment's hostility to content-based regulation extends not only to restrictions on particular viewpoints, but also to prohibition of public discussion of an entire topic."); Davison v. Loudoun Cty. Bd. of Supervisors, 267 F. Supp. 3d 702 (E.D. Va. 2017), aff'd sub nom. Davison v. Randall, 912 F.3d 666 (4th Cir. 2019), as amended (Jan. 9, 2019) ("Viewpoint discrimination is prohibited in all forums."); Ison v. Madison Loc. Sch. Dist. Bd. of Educ., 3 F.4th 887 (6th Cir. 2021) (holding that school board's public participation policy was viewpoint based and violated the First Amendment); see also Rosenberger v. Rector & Visitors of Univ. of Va., 515 U.S. 819 (1995) (holding that a university's refusal to fund a student publication because the publication addressed issues from a religious perspective violated the First Amendment); Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist., 508 U.S. 384 (1993) (holding that a school district violated the First Amendment when it excluded a private group from presenting films at the school based solely on the films' discussions of family values from a religious perspective). Such a violation of the First Amendment, "for even minimal periods of time, unquestionably constitutes irreparable injury." Legend Night Club v. Miller, 637 F.3d 291, 302 (4th Cir. 2011) (quoting Elrod v. Burns, 427 U.S. 347, 373 (1976)).

49.     The Fourteenth Amendment to the Constitution of the United States provides, in part, that "No state shall . . . deprive any person of life, liberty, or property, without due process of law. " The Supreme Court of the United States has held that this due process clause "covers

a substantive sphere as well, 'barring certain government actions regardless of the fairness of the procedures used to implement them." A government action that lacks adequate justification violates the substantive sphere of the due process clause and any person who deprives another of due process of law while acting under the color of law is liable for the resulting compensatory and punitive damages.

50.     It is well established that the Constitution limits a government's ability to regulate places it has opened for expressive activity. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 103 S. Ct. 948 (1983).  In *Rosenberger v. University of Virginia*, 515 U.S. 819 (1995), the university voluntarily funded student publications but denied funding to a religious publication. The United States Supreme Court held that the university's funding created a limited public forum and it could not control the content and perspective. *Id.* at 825.

51.     "Moreover, any "prior restraints on speech . . . are the most serious and least tolerable infringement on First Amendment rights." *Nebraska Press Assn. v. Stuart*, 427 U.S. 539, 559 (1976).

52.     It is well established that speech is protected under the First Amendment.  In *Davison v Loudoun County Bd. Of Supervisors*, 2016 U.S. Dist. LEXIS 125083 at 17, the court noted that "speech on Facebook is subject to the same First Amendment protections as speech in any other context" (citing *Bland v. Roberts*, 730 F.3d 368, 386 (4th Cir. 2013)).  The Eastern District of Virginia recently denied a government defendant's motion to dismiss a complaint that alleged the public official violated constitutional rights when it deleted comments from the county's Facebook page. *Davison v. Plowman*, No. 1:16-cv-0180, 2016 U.S. Dist. LEXIS 74409 (E.D. Va. June 6, 2016).  Similarly, in *Hawaii Def. Found. v City & County of Honolulu*, 2014 U.S. Dist. LEXIS 84266 (2014), the court ordered Honolulu Police Department to pay the plaintiff's

attorney's fees after Honolulu Police Department deleted Plaintiff's comments from the department's Facebook page and blocked plaintiff from making future postings.

53.    Plaintiff's right to join in and participate in public discussions regarding the operation and administration of TJ is a fundamental right.

54.    As Ms. Nomani had a constitutional right to speak in the limited public forum, the Defendant impermissibly restricted her speech based on viewpoint, and "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparably injury," *Elrod v Burns,* 427 U.S. 347 (1976).

55.    The United States Constitution provides Plaintiff with the further protection that she cannot be deprived of her fundamental rights without due process, both pre- and post-deprivation

56.    The court has held that meaningful, prior due process is required before fundamental liberty interests are restricted. *Johnson v Perry,* 2015 U.S. Dist. LEXIS 142885 (2015) citing *Mathews v Eldridge*, 424 U.S. 319, 333 (1976) and *Cleveland Bd. Of Education v Loudermill*, 470 U.S. 532, 542 (1985).

57.    Plaintiff engaged in political discussions regarding the administration of TJ by FCSB and its elected members and its employed administrators.  The issues included matters of local, state, and federal concern including the future of TJ. Plaintiff's protected speech included statements, or attempted to be made, at appropriate public meetings of the Commonwealth of Virginia and the Education Secretary.

58.    Defendant Qarni, acting under the color and authority of state law, violated and breached Plaintiff's First Amendment rights by preventing her participation in legitimate public participation in a debate.  The Defendant further engaged in prior restraint by blocking her participation in a public forum. The limitations on the restrictions which a public body may impose

on the expression of First Amendment speech by a citizen during times allotted for public comment were at the times appertaining well-settled and established. The defendant acted in his official and individual capacities to violate Plaintiff's First Amendment speech rights, as described herein and in his respective official and individual capacities in censoring Nomani's comments on TJ.

59.     Moreover, Secretary Qarni's attacks against Ms. Nomani caused immense harm to her reputation and standing within the PTSA and TJ community.

60.     Consequently, Ms. Nomani requires that Secretary Qarni issue a public video apology for violating her constitutional rights. She seeks $177,600, which she will dedicate to the support of journalists and parents as they express First Amendment rights enshrined today as a fundamental right allowed in the United States of America, founded in 1776.

61.     Despite Nomani's selection to be the representative of the TJ PTSA at a public meeting, Secretary Qarni prematurely canceled Nomani's speaking role.

62.     Here, notwithstanding clear law that require all limitations in these spheres to be necessary to a compelling government purpose, Defendant Secretary Qarni failed to articulate any adequate reason for the ban of Plaintiff Ms. Nomani from public meetings. In addition to clearly lacking any compelling interest, the reasoning of Defendant Secretary Qarni that Ms. Nomani was an "extremist" is clearly a prohibited subject-matter, viewpoint-based restriction on Nomani's constitutionally protected freedom of speech.

63.     The ban that prevented Ms. Nomani from speaking at the public hearing constitutes an outright unconstitutional infringement on Ms. Nomani's future speech.

64.     The bans significantly curtailed Ms. Nomani's ability to communicate with other engaged citizens and influence educational policy decision in Virginia solely based on Ms. Nomani's viewpoint.

**NOMANI V. QARNI**
*Complaint*
Page **17** of 25

65.     As a result of the unconstitutional ban by Defendant Secretary Qarni, Ms. Nomani

lost the ability to question Secretary Qarni on misinformation disseminated by him; share

information with other residents of Virginia; call attention to discriminatory behavior by board

members against citizen activists; or participate in future public discussions that affected Ms. Nomani

and other residents of Virginia.

66.     Plaintiff has suffered damages, including injury to her reputation because of the

Defendant's actions.  The Defendant acted intentionally for the purpose of censoring Plaintiff's

First Amendment speech and he  is liable for damages, actual, and exemplary.


**COUNT 2**
**VIOLATION OF FIRST AMENDMENT /**
**RETALIATION**

**ATIF QARNI**

67.     The allegations of Paragraphs 1-41 are repeated and incorporated herein by

reference.

68.     It is well-settled law that government officials may not use the machinery of

government to retaliate against a citizen for critical speech.  In *Cole v Buchanan,* the court held:

"a public official may not misuse his power to retaliate against an individual for the

exercise of a valid constitutional right, even if the act of the official, absent the retaliatory

motive, would otherwise have been proper…is clearly established that the First

Amendment prohibits and [official] from retaliating against an individual for speaking

critically of the government." *Cole v Buchanan County School Board,* 2007 U.S. Dist.

LEXIS 94790 (2007) citing *Trulock v Freeh,* 275 F.3d 391, 406 (4th Cir. 2001) and

NOMANI V. QARNI
*Complaint*
Page **18** of **25**

*Blankenship v Manchin*, 471 F.3d 523, 533 (4th Cir. 2006).

69.     Defendant Secretary Qarni, acting under the color and authority of state law, barred the Plaintiff from speaking at a public townhall, prohibiting her from speaking to the community, in retaliation of her exercise of her speech protected by the First Amendment.

70.     The ban was issued by Secretary Qarni.  When the TJ PTSA requested review, Secretary Qarni summarily upheld the ban with no due process.

71.     Secretary Qarni told TJ PTSA President Mr. Costescu that he would not agree to lift the ban and would in fact extend the ban to the TJ PTSA if it refused to comply with his ban. The TJ PTSA would not agree to that extortion of Ms. Nomani's constitutionally protected speech and Defendant Secretary Qarni refused to lift the ban and extended it to the TJ PTSA.

72.     Each of these steps taken by Defendant Secretary Qarni to silence Ms. Nomani's speech was in direct response to Ms. Nomani publicly criticizing Secretary Qarni and his admissions policy changes to TJ.

73.     Plaintiff has suffered damages, including injury to her reputation because of the Defendants' actions.  The Defendants acted intentionally for the purpose of censoring Plaintiff's First Amendment speech, retaliating against Plaintiff to inflict emotional harm, and signaling other community members not to engage in similar public criticism of the Defendant. He is liable for damages, actual and exemplary.

## COUNT 3
## PROCEDURAL DUE PROCESS
## DEFENDANT QARNI

74.     The allegations of Paragraphs 1-41 are repeated and incorporated herein.

75.     The Fourteenth Amendment to the Constitution of the United States provides, in part, that "No state shall . . . deprive any person of life, liberty, or property, without due process of law . . ." At a minimum, procedural due process for fundamental rights requires the individual be provided "notice and opportunity for hearing" before the deprivation.

76.     The court has held that meaningful, **prior due process** is required before fundamental liberty interests are restricted. *Johnson v Perry,* 2015 U.S. Dist. LEXIS 142885 (2015) citing *Mathews v Eldridge*, 424 U.S. 319, 333 (1976) and *Cleveland Bd. Of Education v Loudermill*, 470 U.S. 532, 542 (1985).

77.     Secretary Qarni violated Nomani's Fourteenth Amendment Rights of procedural due process when he deprived her of constitutionally protected fundamental liberty interests without providing notice or a meaningful opportunity to be heard prior to the deprivation.  The deprived fundamental interests include: The right to freely discuss public policy and engage with other parents, the Secretary of Education, and community members on an admissions policy that would impact her son's school; The right to be a speaker at the Sept. 17, 2022, meeting and subsequent meetings as a speaker, engaging in free speech; The right of free speech concerning the operation of the Virginia Governor's Schools without fear of retaliation; The right of free speech within the limited public forums created by the Governor's Office and the Office of the Virginia Secretary of Education.

78.     Defendant provided Ms. Nomani with no pre-deprivation hearing or any other meaningful right to be heard before institution of the ban. No exigent circumstances existed to justify imposition of the ban without such an opportunity to be heard.  The Defendant didn't ban Nomani in the heat of the moment as a result from emerging disruption.  The Defendant carefully

considered issuing the ban following Ms. Nomani's critical remarks, starting in August 2020. As such, there was no justification for failing to provide Ms. Nomani a meaningful hearing prior to issuing the ban.

79.    The ban caused substantial harm and injury to Plaintiff both in the immediate interference with her ability to engage in public policy matters and in the public stigma and damage to her reputation caused by the ban and the way Secretary Qarni implemented the ban by smearing Ms. Nomani as a member of a "hate group" to the TJ PTSA President and the public.

80.    Ms. Nomani had a fundamental liberty interest in directing the education of her child as guaranteed under the Fourteenth Amendment.

81.    This liberty interest included the right to engage with public policy makers, including the Virginia Secretary of Education. Defendant Qarni's unqualified ban of Ms. Nomani prevented Ms. Nomani from attending his public meetings as a speaking participant.

82.    After receiving the ban from Secretary Qarni in September 2020 without any prior notice or hearing, the TJ PTSA requested permission to have Ms. Nomani represent the TJ PTSA. Secretary Qarni denied the request.

83.    The right of free speech is a fundamental right. Plaintiff was deprived of her right of free speech guaranteed under the First Amendment, applied to the state under the Fourteenth Amendment, without Due Process of law.

84.    Secretary Qarni violated Ms. Nomani's Fourteenth Amendment rights by depriving her of his constitutional right to free speech without procedural due process. Defendants banned Ms. Nomani from being a speaker at the Sept. 17, 2020, public meeting and didn't lift that ban for future meetings without any prior notice and hearing or appeal after the deprivation had occurred.

85.     Defendant failed to articulate any reasons for the suppression, deletion, and unqualified ban beyond his personal determination that Ms. Nomani was the alleged member of a "hate group." In taking such action, amounting to censorship and prior restraint, Defendant individually served as the sole arbiter in his discretion to conclude that Plaintiff should be silenced.

86.     In addition to clearly lacking any compelling interest, Defendant's rationale for banning Ms. Nomani was clearly a prohibited subject-matter, viewpoint-based restriction on Ms. Nomani's constitutionally protected speech and the subsequent ban on Ms. Nomani constituted an outright unconstitutional infringement on Ms. Nomani's future speech.

87.     Defendant could not legally restrict Plaintiff's participation in the public forums sponsored by the state government and maintained by the Defendant as part of his "official" public engagement without providing pre-deprivation due process.

88.     Ms. Nomani's fundamental liberty interest of free speech was denied without procedural due process.

89.     Defendant Secretary Qarni further violated Ms. Nomani's Fourteenth Amendment Rights by depriving her of her constitutionally protected speech without procedural due process when Defendant limited Ms. Nomani's ability to fully engage in public meetings he hosted.

90.     Ms. Nomani is the mother of one child who attended TJ during the 2020-2021 school year. She was also a journalist and an engaged member of the community who spoke regularly at school meetings, and she was an elected officer of the TJ PTSA, speaking and asking questions at PTSA and school board meetings.

91.     Upon studying the initiatives that Secretary Qarni was promoting, Ms. Nomani recognized the anti-Asian discrimination that was underlying the admissions changes to her son's

school. Secretary Qarni opposed Ms. Nomani's analysis and took measures to bar her ability to speak about this analysis.

92.     After the ban was instituted, Secretary Qarni set the speakers for the Sept. 15, 2020, and Sept. 17, 2020, meetings and never addressed the concerns of so many TJ PTSA members about the anti-Asian discrimination in his admissions considerations. This was the very subject on which Ms. Nomani had been critical. By not granting Ms. Nomani permission to speak at the Sept. 15, 2020, meeting and subsequent meetings, Secretary Qarni blocked a knowledgeable critic of his admissions policy changes from speaking to the very audience that would be most concerned about the issue.

93.     The parents most interested in TJ admissions policy attended the Sept. 15, 2020, and Sept. 17, 2020, meetings, as well as the Dec. 1, 2020, meeting. Ms. Nomani's specific critiques of the new admissions policies could very well result in numerous parents asking such questions to Secretary Qarni and applying pressure for change in policies. The effectiveness of a school system is critical to the education provided to its students. A ban on Ms. Nomani as a speaker was tantamount to an injunction against speech and provided enormous risk of erroneous deprivation without adequate due process.

94.     Ms. Nomani was blocked from speaking at the Sept. 15, 2020, meeting without any pre-deprivation hearing.

95.     In considering any legitimate interests in banning Ms. Nomani from the meeting, the court should consider whether additional measures taken by Secretary Qarni were made in good faith. The Defendant repeated his ban of Ms. Nomani in an interview with an Associated Press reporter, again using the excuse of Ms. Nomani's viewpoints and alleged association with a

"hate group."

96.     A school is traditionally a nonpublic forum but once it has opened its grounds for meetings such as PTSA meetings – limited public forums – it may not place impermissible limitations on speech. Secretary Qarni, having created a forum for speech and expression, could not then violate Ms. Nomani's ability to speak before citizens and parents about matters of public educational concern.

97.     Once again, Ms. Nomani's fundamental liberty interest of free speech was denied without procedural due process.

98.     Procedural due process for fundamental rights requires the individual be provided a meaningful notice and hearing *before* the deprivation occurs. Furthermore, any government interest in depriving a citizen of fundamental rights must be weighed against risk of a mistaken deprivation of those interests in the absence of procedural protections and the probable value of additional protections. It is clear Ms. Nomani's rights were deprived without any legitimate government interest. Ms. Nomani is a long-time member of his community who has never been accused of violence or a crime other than minor traffic infractions. She is a former professor of journalism at Georgetown University, and she received national teaching awards because of her skills in mentoring students with skill.

99.     Ms. Nomani's participation in the public hearings hosted by Secretary Qarni cannot be recreated after they have occurred. As a direct and proximate result of the deprivation of procedural due process rights, Ms. Nomani incurred damages. She, as a parent of a child of at TJ, was prohibited from attending a meaningful event determining the future of her son's school.

100.     Notwithstanding Ms. Nomani's constitutional right to speech, Secretary Qarni

**NOMANI V. QARNI**
*Complaint*
Page **24** of **25**

failed to provide Ms. Nomani any notice or hearing prior to banning her from being a speaker at the state government's public event. Upon protest by the TJ PTSA, Secretary Qarni refused to review the decision, demonstrating: (a) Ms. Nomani does not and never has posed a safety risk, (b) Ms. Nomani has never interrupted student instruction in her numerous visits to school, (c) Ms. Nomani has never been requested to leave the schools, and (d) Ms. Nomani has never exceeded the scope of permission during her participation in school events. Ms. Nomani was not afforded a meaningful hearing on his appeal of the ban. Plaintiff has suffered damages, including injury to her reputation because of the Defendant's actions. The Defendant acted intentionally for the purpose of censoring Plaintiff's First Amendment speech and retaliating against Ms. Nomani for her public criticism and he is liable for damages, actual and exemplary. Thus, the Defendant knowingly and willfully deprived Ms. Nomani of her fundamental right under the color of law and "shall be liable" for such injuries.

NOMANI V. QARNI
*Complaint*
Page 25 of 25

## SUMMARY OF CLAIMS

101.    The following chart provides an overview of the Defendants' actions and the constitutional claim proffered by Ms. Nomani.



| Defendant Action | Retaliation (1st) | Free speech (1st) | Procedural due process (14th) |
|---|---|---|---|
| Banned from speaking at townhall meeting | X | X | X |

**TRIAL BY JURY IS SOUGHT.**

## PRAYER FOR RELIEF

Wherefore, Plaintiff demands judgment against Defendant, in the amount of $177,600.00 compensatory damages and for exemplary damages in such an amount as may be supported by the evidence adduced at trial; for attorney fees and costs as provided by law; for a declaratory judgment holding Defendant's ban against Ms. Nomani violated her constitutional rights; for a video apology from the Defendant; and for such other relief as shall be deemed appropriate and just upon the evidence adduced and issues joined.

Respectfully Submitted,

ASRA Q. NOMANI

Pro Se

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRIGINIA**
**_____ DIVISION**

ASRA Q. NOMANI
_____
Plaintiff(s),

v.

ATIF QARNI
_____
Defendant(s).

Civil Action Number: 22CV1065

## LOCAL RULE 83.1(M) CERTIFICATION

I declare under penalty of perjury that:

No attorney has prepared, or assisted in the preparation of NOMANI V. QARNI COMPLAINT
**(Title of Document)**

ASRA Q. NOMANI
_____
Name of *Pro Se* Party (Print or Type)

*Asra Nomani*
_____
Signature of *Pro Se* Party

Executed on: SEPT 19, 2022 (Date)

**OR**

The following attorney(s) prepared or assisted me in preparation of _____.
**(Title of Document)**

_____
(Name of Attorney)

_____
(Address of Attorney)

_____
(Telephone Number of Attorney)
Prepared, or assisted in the preparation of, this document

_____
(Name of *Pro Se* Party (Print or Type)

_____
Signature of *Pro Se* Party

Executed on: _____ (Date)