IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

ASRA Q. NOMANI,

   Plaintiff,

v.                                                      Case No. 1:22-cv-1065-MSN-WEF

ATIF QARNI, IN HIS OFFICIAL AND
INDIVIDUAL CAPACITY,

   Defendant.

## BRIEF IN SUPPORT OF MOTION TO DISMISS

## I.      INTRODUCTION

Asra Nomani ("Nomani") has filed a three count Complaint against former Virginia Secretary of Education Atif Qarni ("Qarni") arising out of Qarni's decision not to permit Nomani to serve as one of five parent panelists for a panel discussion that was part of a listening session regarding admissions reforms for the Commonwealth's Governor Schools. Nomani, as the parent of a student at Thomas Jefferson High School for Science and Technology ("TJ"), wanted to serve as a panelist and representative of the TJ Parent Teacher Student Association ("TJ PTSA"). Nomani alleges that the refusal to allow her to be a panelist violated her First Amendment right to free speech, was in retaliation for an August 11, 2020 article that she wrote criticizing Qarni and the work group assembled to examine the admissions process, and violated her procedural due process rights under the Fourteenth Amendment.

Neither Nomani nor any other individual had a constitutional right to serve as a panelist for the panel discussion that was part of the listening session. Instead, she was granted the only access and rights to which she was entitled—to attend the listening session and post her comments and questions using the chat feature. Therefore, the Complaint fails to state a claim.

Moreover, even if Nomani could state a claim, her claim is barred by the statute of limitations, because the lawsuit was filed on September 19, 2022, more than two years after the September 15, 2020 listening session. The Complaint should be dismissed with prejudice.

## II. ALLEGATIONS

On August 5, 2020, Nomani emailed Qarni's office—among others—to inquire about a work group that had been assembled to examine admissions to Governor Schools in Virginia. (ECF Doc. 1, at ¶ 4; Email from A. Nomani to C. Pyle, *et al.* (dated August 5, 2020), attached as Ex. 1.) On August 11, 2020, Nomani published an article regarding the efforts to reform admissions policies entitled *The Woke Army's Race War on America: Secretive Virginia Governor's Task Force Threatens Thomas Jefferson High School for Science and Technology*. (ECF Doc. 1, at ¶ 5; Asra Nomani, *The Woke Army's Race War on America: Secretive Virginia Governor's Task Force Threatens Thomas Jefferson High School for Science and Technology* (Aug. 11, 2020), *available at https://asrainvestigates.substack.com/p/the-woke-armys-race-war-on-americas*, attached as Ex. 2.)

Nomani is one of the founders of the Coalition for TJ, which opposed admissions reforms. (ECF Doc. 1, at ¶ 6.) Another Coalition for TJ member emailed Qarni on August 14, 2020, requesting that Qarni read the Coalition for TJ's Petition. (Email from A. Qarni to K. Liu *et al.* (dated Aug. 14, 2020), at 4, attached as Ex. 3.) Qarni provided a lengthy response, outlining the work of his administration, and shared with the Coalition for TJ member that "the TJ principal, a TJ student, an FCPS School Board member, FCPS Superintendent and several General Assembly members from Fairfax and NOVA" are part of the work group considering admissions reforms. (*Id.* at 3.) He informed the member that "Your fellow Coalition members have grossly mischaracterized this work group as not being inclusive or lacking transparency.

2

There are more people representing TJ in the work group than any other Governor's School."

(*Id.*)  Qarni told the Coalition member that he found it "highly inappropriate that some of your

fellow Coalition members have tried to bully and slander members of this work group." (*Id.*)

And that "it was also brought to my attention that one of your fellow Coalition members is

associated with people and a group that was declared a hate group by the Southern Poverty Law

Center." (*Id.*)  Qarni went on to state:

> The correspondence I received from your Coalition is full of hate and deceit.  One
> of your coalition members used an email account falsely representing TJ PTSA.
> Some of your Coalition members have bullied and slandered members of the
> FCPS school board and FCPS Superintendent who have tried to address various
> inequities I listed above.  Some of your Coalition members have bullied and
> slandered TJ administration in trying to address the inequities that exist in our
> schools, our gifted programs and with the antiquated admission policy at TJ.
>
> * * *
>
> Some of your Coalition members have made outrageous claims that state and
> local efforts are Anti-Asian.  Asian community is not monolithic.  Many children
> from Asian working-class families are also not benefiting from Governor Schools,
> specialty and gifted programs.  I find these claims disheartening:  especially
> because I am Muslim, an Immigrant, and an Asian American who has faced
> racism and understand the challenges of marginalized groups.  It is disturbing to
> see your Coalition members making this about Asian versus Blacks and Hispanic
> families.  The correspondence I've seen from your Coalition and the rhetoric
> some of your Coalition members are using is just like rhetoric of white
> supremacists and hate groups.  I don't believe this Coalition is representative of
> the Greater TJ, Fairfax, or Northern VA Community.
>
> I will not be meeting with this Coalition or certain members of this Coalition due
> to the reasons I listed above.

(*Id.*)

On August 21, 2020, Qarni's executive assistant emailed TJ PTSA president Nicholas

Costescu seeking two TJ PTSA members to join a virtual panel discussion regarding Governor's

Schools on September 8, 2020.  (ECF Doc. 1, at ¶ 8; Email from H. Al-Tinawi to N. Costescu

(dated Aug. 21, 2020, attached as Ex. 4.)  Costescu and Qarni had a call to discuss the listening

session on August 28, 2020.  (ECF Doc. 1, at ¶ 15.)  Nomani alleges that during this call, Qarni

informed Costescu that Nomani could not be a panelist, and he would block the TJ PTSA from participating if the TJ PTSA insisted that Nomani serve as a panelist. (*Id.*) Nomani also alleges that during this call Qarni accused her of being "associated with a hate group." (*Id.* at ¶ 18.)

On September 3, 2020, Qarni emailed the public an invitation for the "Virtual Town Halls re: Governor Schools" to "address questions about the state process and plans to improve the Diversity at our Governor Schools by making the admission process more Equitable and Inclusive." (*Id.* at ¶ 26; Email from A. Qarni (dated Sept. 3, 2020), attached as Ex. 5.) Three Town Halls were scheduled. One for current Governor School students (September 9, 2020), one for parents of current Governor School students (September 15, 2020), and one for alumni of Governor Schools (September 17, 2020). (ECF Doc. 1, at ¶ 26; Ex. 5.)

On September 5, 2020, Costescu emailed Qarni to inform him that Costescu and Nomani would be the TJ PTSA representatives to serve as panelists for the September 15, 2020 Town Hall. (ECF Doc. 1, at ¶ 27; Email from N. Costescu to A. Qarni, *et al.* (dated Sept. 5, 2020), attached as Ex. 6.) Qarni responded to Costescu the same day, informing him that "TJ PTSA doesn't need to be represented on the panel. We have had several parents of current TJHSST students reach out to our office who are really engaged in the issue. If I'm not mistaken, my office has already confirmed a TJHSST parent for the panel." (ECF Doc. 1, at ¶ 33; Email from A. Qarni to N. Costescu, *et al.* (dated Sept. 5, 2020), attached as Ex. 7.) Qarni invited TJ PTSA members "to attend and ask questions during the Q/A part of the meeting." (Ex. 7.) Qarni informed Costescu that he was "not going to let that process be dominated by individuals or organizations engaging in vitriolic hateful discourse," and that he "encourage[d] everyone on this email to try to attend any of the three sessions to engage in a productive dialogue on how to improve the admission policy and overall how to improve our gifted programs." (*Id.*)

On September 7, 2020, a TJ parent emailed Qarni inquiring why he was "banning a parent and representative . . . at an upcoming meeting about changing the admission standards at TJHSST." (ECF Doc. 1, at ¶ 34; Email from A. Qarni to M. Fallon (dated Sept. 7, 2020), attached as Ex. 8.) Qarni responded that he was "hosting three virtual town halls . . . to address questions about the process and plans to improve Diversity at our Governor Schools by making the admissions process more Equitable and Inclusive. TJ PTSA members are more than welcome to attend and ask questions during the Q/A part of the meeting." (Ex. 8.) Qarni advised this parent that he was "not going to let that process be dominated by individuals engaging in vitriolic hateful discourse" and that the "TJ PTSA Executive Committee is insisting that they be represented by a person who has engaged in a lot of vitriolic hateful discourse. I requested they designate someone else to be on the panel and they did not want to do that." (*Id.*)

On September 10, 2020, the Associated Press published an article about the decision not to permit Nomani or anyone else from the TJ PTSA to serve as a panelist for the September 15, 2020 listening session. (ECF Doc. 1, at ¶ 37; Matthew Barakat, *PTA clashes with education secretary on admissions changes*, Associated Press (Sept. 10, 2020), *available at* https://apnews.com/article/science-religion-education-race-and-ethnicity-4ffeff749724f5d3cf2a776969d63a41, attached as Ex. 9.) Qarni is reported to have stated that including Nomani on the panel would be "divisive." (Ex. 9.)

On September 15, 2020, Qarni hosted a 1.5 hour virtual listening session in which two parents of students at TJ and three parents of students at Maggie L. Walker Governor's School served on a panel along with Qarni, Fran Bradford (Deputy Secretary of Education), and Dr. Janice Underwood (Chief Diversity Officer for the Commonwealth). (ECF Doc. 1, at ¶ 40; Zoom Recording (Sept. 15, 2020), attached as Ex. 10.) The virtual meeting was open to the

public, and participants could communicate with the panelists, and one another, through the Zoom chat feature.  (Ex. 10.)

## III.    ARGUMENT

### A.    Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a court to dismiss an action if the Complaint fails to state a claim upon which relief can be granted.  *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).  In reviewing a defendant's motion under Rule 12(b)(6), a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the light most favorable to the plaintiff.  Legal conclusions, however, enjoy no such deference. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  As the court pointed out in *Iqbal,* "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Id.* at 678 (emphasis added) (internal quotations omitted).

A court should grant a motion to dismiss, however, where the allegations are nothing more than legal conclusions, or where the allegations permit a court to infer no more than a possibility of misconduct.  *See Iqbal,* 556 U.S. at 678–79.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *See id.* at 678.

To state a plausible claim for relief, the Supreme Court has held that a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  To discount such unadorned conclusory allegations "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Iqbal,* 556 U.S. at 679.  This approach recognizes that "'naked

assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" *Francis v. Giacomelli,* 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly,* 550 U.S. at 557).

The law is clear that "in reviewing a Rule 12(b)(6) dismissal, [courts] are not confined to the four corners of the Complaint." *U.S. ex. rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F. 3d, 131, 136 (4th Cir. 2014). Documents that are explicitly incorporated into the Complaint by reference and those attached to the Complaint as exhibits may be considered. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); Fed. R. Civ. P. 10. The Court may also consider documents integral to the Complaint. *Goines v. Valley Community Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). A document is integral to a complaint when the claims "turn on, []or are . . . otherwise based" on the document. *Id.* Where the plaintiff attaches or incorporates a document upon which her claim is based, or when the Complaint shows that the plaintiff has adopted the contents of the document, it is proper to accept the contents of the documents over conflicting allegations in the Complaint. *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 233-35 (4th Cir. 2004).

When all facts necessary to establish the affirmative defense based on the statute of limitations clearly appear on the face of the complaint, the defense may be reached by a motion to dismiss under Rule 12(b)(6). *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007).

**B.** **Nomani's claims are barred by the statute of limitations.**

Section 1983 provides a cause of action for any person whose constitutional rights have been violated by a state actor under color of state law. 42 U.S.C. § 1983. Section 1983 has no explicit statute of limitations. Instead, federal courts borrow the personal injury statute of limitations from the relevant state. *Owens v. Balt. City State's Attorneys Office*, 767 F.3d 379,

388 (4th Cir. 2014); *Nasim v. Warden*, 64 F.2d 951, 955 (4th Cir. 1995). Virginia applies a two-year statute of limitations to personal injury claims. Va. Code § 8.01-243(A). Federal law dictates when a § 1983 claim accrues. *Nasim*, 64 F.3d at 955. "A claim accrues when the plaintiff becomes aware of his or her injury, *United States v. Kubrick*, 444 U.S. 111, 123 (1979), or when he or she "is put on notice . . . to make reasonable inquiry" as to whether a claim exists, *Nasim*, 64 F.3d at 955. A claim based upon allegedly discriminatory actions occurring outside of the applicable limitations period is time-barred. *Demuren v. Old Dominion Univ.*, 33 F. Supp. 2d 469, 476 (E.D. Va. 1999).

Nomani claims that she was "banned" from participating as a panelist for the September 15, 2020 "listening session." (ECF Doc. 1, at ¶¶ 39-40.)

> Secretary Qarni held his "listening session" on Tuesday, September 15, 2020. The PTSA was not allowed to have a representative speak and Ms. Nomani was not allowed to speak as a PTSA representative. No parents except for parents hand-selected by Secretary Qarni were allowed to speak.

(*Id.* at ¶ 40.) Nomani further alleges that she was not provided an opportunity to challenge Qarni's "rejection of her as a speaker" and she was provided with "no notice nor hearing at any time to restore her ability to participate in the Sept. 15, 2020, town hall." (*Id.* at ¶ 41.)

Because Nomani claims that she was deprived of her constitutional rights by not being permitted to serve as a panelist for the September 15, 2020 listening session, the two-year statute of limitations expired on September 15, 2022. Nomani did not file her Complaint until September 19, 2022. (ECF Doc. 1.) Therefore, her claims are time-barred, and the Complaint must be dismissed with prejudice.

While Nomani attempts to assert that she was restricted from participating in the September 17, 2020 listening session and a December 1, 2020 public meeting of Asian American community leaders, (*id.* at ¶ 41), there are no facts in the Complaint to support those allegations.

8

As alleged in the Complaint, the September 17, 2020 listening session was for "alumni of Governor's Schools." (*Id.* at ¶ 26.) The Complaint contains no facts to support the allegation that Nomani attempted to, or was precluded from, participating in that listening session. Additionally, the December 1, 2020 public meeting of Asian American community leaders was not a listening session related to the Commonwealth's Governor's Schools and was not an event related to the "the operation and administration of TJ," (*id.* at ¶ 53), the discussion in which Nomani asserts she has a fundamental right to participate. Nor are there any allegations in the Complaint related to the December 1, 2020 meeting.

The Complaint arises out of Nomani's inability to serve as a panelist on the September 15, 2020 "listening session" for parents of current students at Virginia's Governor's Schools after the TJ PTSA designated her to be one of its representatives. (*Id.* at ¶¶ 26-27, 31, 33, 39-41, 61, 63, 69-72, 92, 94.) Her allegations regarding the September 17, 2020 listening session and December 1, 2020 meeting do not save her claims.

## C.     The Complaint does not state a claim against Qarni.

Even if Nomani's claims were not time-barred, the Complaint does not state a claim, because she did not have a constitutional right to serve as a panelist for any of Qarni's "listening sessions". "Nothing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities." *Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.*, 473 U.S. 788, 799-800 (1985).

### 1.    Qarni did not violate Nomani's First Amendment right to free speech.

In Count 1, Nomani alleges that Qarni violated her First Amendment right to free speech by exercising a prior restraint of speech.  (ECF Doc. 1, at ¶¶ 44-45.)  Qarni hosted a "listening session" to which he invited certain individuals to participate "in a virtual panel discussion" that was open to the public who could then post "written comment[s] in the meeting's chat box".  (*Id.* at ¶¶ 8-9.)  Nomani argues that in doing so, Qarni created a "limited public form".  She asserts that her "right to join in and participate in public discussions regarding the operation and administration of TJ is a fundamental right", she had a "constitutional right to speak in the limited public forum," and Qarni "impermissibly restricted her speech based on viewpoint." (*Id.* at ¶ 54.)  Nomani is incorrect.

The listening session was open to the public, and Nomani was free to use the provided link to attend the Zoom meeting and post her questions and comments in the chat box.  She was not denied access and was not denied the right to speak.  Therefore, there was no violation of her First Amendment right to free speech. *See Cornelius*, 473 U.S. at 799-800.

Further, Qarni's decision not to include Nomani as one of the five panelists on the panel as part of the listening session did not violate her First Amendment right to free speech.

Courts have adopted a forum analysis to determine "when the Government's interest in limiting the use of its property to its intended purpose outweighs the interest of those wishing to use the property for other purposes." *Cornelius*, 473 U.S. at 800.  There are three categories of fora: "the traditional public forum, the public forum created by government designation, and the nonpublic forum." *Id.* at 802.  Traditional public fora are those areas that "by long tradition or by government fiat" have been "devoted to assembly and debate." *Perry Educ. Ass'n v. Perry Local Educator's Ass'n*, 460 U.S. 37, 45 (1983).  Designated public fora are created by

purposeful governmental action when the government intentionally opens a nontraditional public

forum for public discourse. *Arkansas Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 677

(1998). "Other governmental properties are either nonpublic fora or not fora at all." *Id.* When

defining the forum, the court focuses on the access sought by the speaker. *Cornelius*, 473 U.S. at

801.

The panel discussion for the listening session was not a traditional public forum. Nor

was it a designated public forum, because there is no allegation that Qarni, as Secretary of

Education, intended to make it "generally available" to a class of speakers. *Forbes*, 23 U.S. at

678 (citing *Widmar v. Vincent*, 454 U.S. 263, 264 (1981)). "A designated public forum is not

created when the government allows selective access for individual speakers rather than general

access for a class of speakers." *Id.*

> Implicit in the concept of the nonpublic forum is the right to make distinctions in
> access on the basis of subject matter and speaker identity. These distinctions may
> be impermissible in a public forum but are inherent and inescapable in the process
> of limiting a nonpublic forum to activities compatible with the intended purpose
> of the property. The touchstone for evaluating these distinctions is whether they
> are reasonable in light of the purpose which the forum at issue serves.

*Perry Educ. Ass'n*, 460 U.S. at 49. The panel discussion was a nonpublic forum to which

Nomani had no constitutional right of access. Qarni was not required to permit an unlimited

number of participants in the panel discussion. As the host of the event, he was allowed to

determine who was granted access as a panelist. Nomani, like the public at large, was granted

access to listen to the discussion and comment in the chat box. (ECF Doc. 1, at ¶ 9.)

Nomani was not excluded as a panelist because of her viewpoints on Qarni's proposed

reform efforts. The panelists for the listening session had a variety of viewpoints. (Ex. 10

(recording of the listening session).)[1]   Contrary to Nomani's conclusory allegation that Qarni engaged in viewpoint discrimination, the facts alleged in the Complaint and supporting documents and recording reveal a viewpoint neutral reason for not permitting Nomani to participate as a panelist.  In Qarni's opinion, Nomani had "engaged in a lot of vitriolic hateful discourse," (Exs. 7-8), and he was "not going to let that process be dominated by individuals or organizations engaging in vitriolic hateful discourse." (ECF Doc. 1, at ¶ 33; Ex. 7.)  Instead, he sought participants who would "engage in a productive dialogue on how to improve the admissions policy and overall how to improve our gifted programs." (Ex. 7.)  Qarni concluded that including Nomani on the panel would be "divisive." (Ex. 9.)  This is a reasonable restriction for a nonpublic forum.

> Although the avoidance of controversy is not a valid ground for restricting speech in a public forum, a nonpublic forum by definition is not dedicated to general debate or the free exchange of ideas. The First Amendment does not forbid a viewpoint-neutral exclusion of speakers who would disrupt a nonpublic forum and hinder its effectiveness for its intended purpose.

*Cornelius*, 473 U.S. at 811.  "Government need not wait until havoc is wreaked to restrict access to a nonpublic forum." *Perry Educ. Ass'n*, 460 U.S. at 52, n. 12.  *See also Startzell v. City of Phila.*, 533 F.3d 183, 198 (3d Cir. 2008) ("The right of free speech does not encompass the right to cause disruption.")

### 2.      **Qarni did not retaliate against Nomani.**

In Count 2, Nomani alleges that she was "barred" from "speaking at a public townhall," which prohibited "her from speaking to the community, in retaliation of her exercise of her

---

[1] The five panelists representing parents of Governor School students were diverse not only in their racial demographics, but also their life experiences.  They were also diverse in their viewpoints on proposed admission changes, including opposing changes and keeping Governor School admissions merit based.  The panelists were all civil in their discourse, and the dialogue was productive.  (*See* Ex. 10.)

speech protected by the First Amendment." (ECF Doc. 1, at ¶ 69.) She alleges that this action "was in direct response to Ms. Nomani publicly criticizing Secretary Qarni and his admissions policy changes to TJ." (*Id.* at ¶ 72.)

To state a plausible retaliation claim under the First Amendment, a plaintiff must allege facts to show that: "(1) [s]he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected [her] First Amendment rights, and (3) there was a causal relationship between [her] protected activity and the defendant's conduct." *Martin v. Duffy*, 977 F.3d 294, 299 (4th Cir. 2020).

Assuming that Nomani engaged in protected First Amendment activity when she authored the August 11, 2020 article, there are no facts in the Complaint to support an allegation that Qarni took an action that adversely affected her First Amendment rights. As explained *supra*, Nomani's First Amendment rights were not implicated by Qarni's decision to not permit her to serve as a panelist for the September 15, 2020 listening session. She was able to fully and freely exercise the rights available to her under the First Amendment by logging into the listening session and posting her comments and questions in the chat. Therefore, she fails to state a claim for retaliation under the First Amendment, and Count 2 must be dismissed with prejudice.

### 3. Qarni did not violate Nomani's due process rights.

In Count 3, Nomani alleges that Qarni violated her 14th Amendment procedural due process rights "when he deprived her of constitutionally protected fundamental liberty interests without providing notice or a meaningful opportunity to be heard prior to the deprivation." (ECF Doc. 1, at ¶ 77.) According to Nomani,

> The deprived fundamental interests include: [1] The right to freely discuss public policy and engage with other parents, the Secretary of Education, and community

members on an admissions policy that would impact her son's school; [2] the right to be a speaker at the September 17, 2022, meeting[2] and subsequent meetings as a speaker, engaging in free speech; [3] the right of free speech concerning the operation of the Virginia Governor's Schools without fear of retaliation; [and 4] the right of free speech within the limited public forums created by the Governor's Office and the Office of the Virginia Secretary of Education.

(*Id.*)

To plead a due process claim, a plaintiff must allege facts to show that she was deprived of "'life, liberty or property, by governmental action.'" *Equity in Athletics, Inc. v. Dept. of Education*, 639 F.3d 91, 109 (4th Cir. 2011) (quoting *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997)). "If the plaintiff has not been deprived of a protected liberty or property interest, then the question of whether she was afforded due process is 'irrelevant, for the constitutional right to 'due process' is simply not implicated.'" *Scarborough v. Frederick Cnty. Sch. Bd.*, 517 F. Supp. 3d 569, 581 (W.D. Va. 2021) (quoting *Iota Xi Chapter of Sigma Chi Fraternity v. Patterson*, 566 F.3d 138, 146 (4th Cir. 2009)). The "broad concept of liberty includes the right to free speech, though the right remains subject to reasonable government regulation." *Id.* (quoting *Vaher v. Town of Orangetown*, 916 F. Supp. 2d 404, 432 (S.D.N.Y. 2013)).

As explained *supra*, Nomani's constitutional right to free speech was not violated. She had no constitutional right to serve as a panelist in the nonpublic forum created when Qarni hosted a listening session for parents of Governor's School students. She was free to participate in the session along with the rest of the general public. She was not deprived of a liberty interest; therefore, there is no due process violation.

---

[2] There was no September 17, 2022 meeting and, as explained *supra*, Nomani's claims arise out of her inability to serve as a panelist for a September 15, 2020 listening session.

**D.** **Qarni is entitled to qualified immunity.**

Qualified immunity provides immunity from suit rather than a mere defense to liability. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Thus, it should be resolved at the earliest possible stage of litigation. *Anderson v. Creighton*, 483 U.S. 635, 646, n.6 (1987) (emphasis added). Indeed, qualified immunity "is effectively lost if a case is erroneously permitted to go to trial." *White v. Pauly*, 137 S. Ct. 548, 551–52 (2017). The safe harbor of qualified immunity ensures that public employees will not be liable for bad guesses in gray areas, but only for transgressing bright lines. *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992) (emphasis added).

The Supreme Court has outlined a two-pronged test governing qualified immunity. The first prong considers whether the facts, viewed in the light most favorable to the plaintiff, make out a violation of a Constitutional right. If they do, the second prong considers whether the constitutional right in question was "clearly established" at the time of the defendants' alleged violation. *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009). The Court has discretion to determine which prong to address first. *Hunsberger v. Wood*, 570 F.3d 546, 552 (4th Cir. 2009).

A clearly established right is not discussed in a generalized fashion, but instead must be defined at a high level of particularity. *Wilson v. Kittoe*, 337 F.3d 392, 403 (4th Cir. 2003). The Supreme Court has reiterated that "clearly established law must be 'particularized' to the facts of the case . . . [o]therwise, plaintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *White*, 137 S. Ct. 548, 552 (2017) (emphasis added).

> [A] court must ask whether it would have been clear to a reasonable officer that the alleged conduct was unlawful in the situation he confronted. If so, then the defendant officer must have been either incompetent or else a knowing violator of the law, and thus not entitled to qualified immunity. If not, however—*i.e.,* if a reasonable officer might not have known for certain that the conduct was unlawful—then the officer is immune from liability.

*Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017).

"A government official violates clearly established law when, at the time of the challenged conduct, the contours of the right are sufficiently clear such that every reasonable official would understand that what he is doing violates that right—in other words, the legal question must be 'beyond debate.'" *Doe v. Rector & Visitors of George Mason Univ.*, 132 F. Supp. 3d 712, 725 (E.D. Va. 2015) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011)). In the Fourth Circuit, the general rule is that only the decisions of the Supreme Court, the Fourth Circuit, and the highest court of the state in which the conduct occurred are relevant. *Doe ex rel. Johnson v. S.C. Dept. of Soc. Servs.,* 597 F.3d 163, 176 (4th Cir. 2010).

For the reasons stated *supra*, the allegations in the Complaint do not set forth a Constitutional violation. As such, the qualified immunity inquiry can end without addressing the second prong. Nevertheless, it was not clearly established that Qarni would violate Nomani's Constitutional rights by not selecting her to be a panelist for a listening session held to discuss the admissions process at the Commonwealth's Governor Schools when she was otherwise able to participate in the session with the general public. After an exhaustive search, counsel for Qarni has not found a single case recognizing a constitutional right to participate in a panel discussion when the plaintiff was otherwise free to participate in an open chat room. Qarni is entitled to qualified immunity.

**ATIF QARNI**

By Counsel

/s/
David P. Corrigan (VSB No. 26341)
Melissa Y. York (VSB No. 77493)
Counsel for Atif Qarni
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia  23255
804-747-5200 - Phone
804-747-6085 - Fax
dcorrigan@hccw.com
myork@hccw.com

# C E R T I F I C A T E

I hereby certify that on the 30th day of January, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and I hereby certify that I have mailed by United States Postal Service the document to the following:

Asra Q. Nomani
409 Seneca Road
Great Falls, VA 22066
304-685-2189
asra@asranomani.com

/s/
David P. Corrigan (VSB No. 26341)
Melissa Y. York (VSB No. 77493)
Counsel for Atif Qarni
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia  23255
804-747-5200 - Phone
804-747-6085 - Fax
dcorrigan@hccw.com
myork@hccw.com